UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MELISSA MARQUEZ-WARNER, et al.,                                        Plaintiffs,

v.                                             Civil Action No. 3:15-cv-172-DJH-CHL

CAMPUS CREST AT LOUISVILLE, LLC, et
al.,                                                              Defendants.

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

Anthony Warner died in a tragic accident while working at a construction site. His estate, widow, and child's guardian seek damages for wrongful death and loss of consortium from several defendants, including Titan Electric of Kentucky, LLC; Campus Crest Construction, Inc.; Campus Crest at Louisville, LLC; Campus Crest Development, Inc.; JCR Company, Inc.; and Bigford Enterprises, Inc. (Docket No. 23) Titan Electric, Campus Crest Construction, Campus Crest at Louisville, Campus Crest Development, JCR Company, and Bigford Enterprises have moved for summary judgment. (D.N. 89; D.N. 101; D.N. 108; D.N. 128) For the reasons explained below, JCR Company's motion will be denied. The other defendants' motions will be granted.

I.      **BACKGROUND**

Campus Crest at Louisville purchased land near the University of Louisville to develop a student housing facility known as "The Grove." (D.N. 101-2, PageID # 1395) Campus Crest at Louisville entered into a development agreement with Campus Crest Development under which Campus Crest Development would be responsible for supervising construction of the project. (*Id.*) Per the agreement, Campus Crest Development was not responsible for construction or safety; those were the responsibilities of the general contractor. (*Id.*, PageID # 1402) Campus

Crest at Louisville named Campus Crest Construction as general contractor to furnish all design and construction services.  (D.N. 101-3, PageID # 1433-34)  Under the design-build agreement, Campus Crest at Louisville appointed a representative to "be fully acquainted with the Project" and retained the right to object to subcontractors, to order changes in the work, and to correct worksite hazards if the general contractor failed to do so.  (*Id.*, PageID # 1446-47, 1452, 1442) Campus Crest Construction, however, had "overall responsibility for safety precautions and programs" under the agreement.  (*Id.*, PageID # 1441)

Campus Crest Construction hired a number of subcontractors to perform various tasks at The Grove.  Titan Electric contracted to perform all electrical work on the project.  (D.N. 101-4) DM Masonry agreed to perform all masonry labor.  (D.N. 102-2)  Campus Crest Construction tasked JCR Company with work involving drywall, paint, insulation, interior trim, cabinets, doors, door hardware, bath accessories, shelving, and mini-blinds.  (D.N. 121-1)  Bigford Enterprises agreed to perform all framing on the project.  (D.N. 131-1; D.N. 131-2)  Through the various subcontracts, Campus Crest Construction imposed upon the subcontractors a duty to maintain a safe work environment.  (*See* D.N. 121-1, PageID # 1984; D.N. 131-2, PageID # 2204)  The various subcontracts required the subcontractors to keep the worksite free from debris, comply with OSHA and KOSHA safety regulations, report unsafe conditions, and ensure that fall-protection devices were in place.  (D.N. 121-1, PageID # 1984; D.N. 121-2, PageID # 2052; D.N. 131-2, PageID # 2204; D.N. 131-3, PageID # 2214)

In July 2014, Titan Electric posted an ad on Craigslist seeking laborers to assist at The Grove.  (D.N. 93-4, PageID # 1222, 1228; D.N. 128-2, PageID # 2143)  Warner responded to the ad via email on July 14, 2014, and Titan's Vice President Joshua Boling informed him that the job would last six weeks and pay $15 an hour.  (D.N. 93-4, PageID # 1217, 1228, 1222-24,

1230)  When Warner expressed interest in the job, Boling talked to him on the phone and instructed him to report to The Grove for an interview.  (*Id.*, PageID # 1228, 1223-24)  At that time, Boling also sent an email to Tommy Dimaio at Hardhat,[1] stating that Warner would be starting work the next day, July 15, 2014.  (*Id.*, PageID # 1230; D.N. 93-5, PageID # 1234)  Despite the fact that Warner's application had not been processed, he was put to work on July 15th laying out light fixtures and picking up trash.  (D.N. 93-4, PageID # 1218; D.N. 93-5, PageID # 1234, 1240-41)  David Gilbreath, a supervisor for Titan, ensured that prospective employees completed applications.  (D.N. 93-5, PageID # 1231, 1233-34, 1238)

On July 16, 2014, Warner fell from a second-floor elevator shaft to his death.  (D.N. 131-6, PageID # 2242)  The Kentucky Labor Cabinet's Office of Occupational Safety and Health concluded that the elevator shaft was unguarded and cited Titan Electric for failing to use guardrails.  (D.N. 131-7, PageID # 2247)  It is unclear how long the elevator shaft had been left unguarded at the time of the accident.  In addition, pallets of wrapped deadbolts and light fixtures were found in the hallway by the elevator shaft.  (D.N. 121-12, PageID # 2099-2100; D.N. 131-7, PageID # 2246)  The Office of Occupational Safety and Health took note of the pallets of light fixtures and cited Titan Electric for failing to keep the hallway free and clear.  (D.N. 131-7, PageID # 2246)

## II.    STANDARD

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see* 56(c)(1).  For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.

---

[1]  Hardhat was a construction-staffing company that helped Titan Electric find workers for specific projects.  (*See* D.N. 85, PageID # 1147; D.N. 93-1, PageID # 1207-08, 1210)

*Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, the Court "need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014).  If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed.  Fed. R. Civ. P. 56(e).  To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of her claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## III.  DISCUSSION

### A.    Titan's Motion for Summary Judgment

Titan argues that the exclusivity provision of Kentucky's workers' compensation law bars Plaintiffs' civil claims against Titan.  (D.N. 89-1, PageID # 1169)  Plaintiffs disagree.  (D.N. 93, PageID # 1196)  The Kentucky Workers' Compensation Act provides:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.

Ky. Rev. Stat. § 342.690(1).  The exclusivity provision "grants immunity for liability arising from common law and statutory claims."  *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 323 (Ky. 2010) (quoting *Ky. Emp'rs Mut. Ins. v. Coleman*, 236 S.W.3d 9, 13 (Ky. 2007)).  The provision's effect is to "shield a covered employer and its insurer from any other liability to a covered employee for damages arising out of a work-related injury."  *Id.* (quoting *Coleman*,

236 S.W.3d at 13). "This immunity is pivotal in maintaining the tradeoff—guaranteed compensation for the injured and immunity in court for the employer—inherent in Kentucky's workers' compensation law." *Marquez-Warner v. Campus Crest at Louisville, LLC*, No. 3:15-cv-172-DJH-CHL, 2016 WL 5402767, at *2 (W.D. Ky. Sept. 26, 2016) (citing *Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 583 (6th Cir. 2016)).

"A certification of coverage from the Department of Workers' Claims or an uncontroverted affidavit from the employer's insurer is prima facie proof that a company has secured payment of compensation for the purposes of KRS 342.690(1)." *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 605 (2007). "Absent evidence that the coverage was in some way deficient as to a worker, such a showing is enough to invoke the exclusive remedy provision . . . ." *Id.* Titan has presented a certificate of liability insurance from its insurer and a copy of its workers' compensation and employers' liability policy. (*See* D.N. 89-1, PageID # 1171, 1176-1183) Although the certificate was not issued by the Department of Workers' Claims, Plaintiffs have not disputed that Titan carried workers' compensation insurance or argued that the coverage was in any way deficient. (*See* D.N. 93, PageID # 1197) The Court thus finds the evidence here sufficient to show that Titan secured payment of compensation for purposes of § 342.690(1). Plaintiffs argue, however, that there is a genuine issue of material fact as to whether Titan was Warner's employer. (*See id.*, PageID # 1197-1202)

The Kentucky Department of Workers' Claims initially found that Warner was an employee of Titan at the time of his death. (D.N. 93-7, PageID # 1266) Titan appealed, and the Kentucky Workers' Compensation Board vacated the determination that Titan employed Warner at the time of his death and remanded the claim for further analysis. (D.N. 93-8, PageID # 1285) In its opinion on remand, the Department concluded that Warner was an employee of both Titan

and Hardhat at the time of his death.  (D.N. 157-1, PageID # 2411)  Hardhat evidently filed a petition for reconsideration, but no ruling had been made as of October 3, 2017.  (*See* D.N. 145, PageID # 2325)

The Kentucky Workers' Compensation Act defines "employer" as "[a]ny person, other than one engaged solely in agriculture, that has in this state one (1) or more employees subject to this chapter."  Ky. Rev. Stat. § 342.630(1).  The Act further defines "employee" as "[e]very person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer."  § 342.640(1).  This definition of "employee" determines when a person shall be deemed an employee for purposes of workers' compensation coverage.  *See Pike Cty. Bd. of Educ. v. Mills*, 260 S.W.3d 366, 369 (Ky. Ct. App. 2008).

Joshua Boling, Titan's vice president, first talked to Warner and told him to report to the job site for an interview.  (D.N. 93-4, PageID # 1230, 1217, 1223)  Boling also told Warner that the job would last six weeks and pay $15 an hour.  (*Id.*, PageID # 1224, 1228)  Finally, Boling stated in an email to Hardhat that he had "a new guy" starting the next day, referring to Warner.  (*Id.*, PageID # 1230; D.N. 93-5, PageID # 1234)  Warner reported to the job site on July 15, 2014, and was put to work laying out light fixtures and picking up trash.  (D.N. 93-5, PageID # 1240-41)  These facts show that Titan, through Boling, knowingly employed Warner through an implied contract of hire.  *See Abel Verdon Constr. v. Rivera*, 348 S.W.3d 749, 752-54 (Ky. 2011) (finding that substantial evidence supported ALJ's conclusion that claimant was an employee

where claimant's work was within the scope of the employer's business; the employer controlled the work being performed; and the work did not require any particular skill).

Based on the facts outlined above, the Court finds that Warner was Titan's employee and Titan was Warner's employer for purposes of the Kentucky Workers' Compensation Act.[2] And it is undisputed that Titan carried workers' compensation insurance. (*See* D.N. 89-1, PageID # 1176-83; D.N. 93, PageID # 1197) Thus, the exclusivity provision applies, and Titan has "immunity for liability arising from common law and statutory claims." *Slusher*, 325 S.W.3d at 323; *see also Hardin v. Action Graphics, Inc.*, 57 S.W.3d 844, 845-46 (Ky. Ct. App. 2001) (holding that a loss-of-consortium claim is covered by the exclusive-remedy provision of Kentucky's Workers' Compensation Act). Because Plaintiffs' claims against Titan belong before the Kentucky Department of Workers' Claims, the Court will grant summary judgment in favor of Titan.

Even if Titan were not Warner's employer, summary judgment in favor of Titan would still be appropriate. Plaintiffs have asserted negligence and loss-of-consortium claims against Titan. (D.N. 23) A negligence claim "requires proof that . . . the defendant owed the plaintiff a duty of care." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (citing *Mullins v. Commonwealth Life Ins. Co., Ky.*, 839 S.W.2d 245, 247 (Ky. 1992)). Plaintiffs do not argue that Titan owed Warner a duty outside of the employment context. (*See* D.N. 93, PageID # 1193-1204) In the absence of any duty owed to Warner by Titan, Plaintiffs' negligence claims fail, as

_____

[2] The Court acknowledges Plaintiffs' argument and supporting evidence showing that Warner was employed by Hardhat. (*See* D.N. 93, PageID # 1198-1201) But the Court is unaware of any authority, and Plaintiffs cite none, holding that an employee cannot have more than one employer for purposes of Kentucky's workers' compensation law. Indeed, the Department of Workers' Claims ruled that both Titan and Hardhat were Warner's employers. (D.N. 157-1, PageID # 2411) The Court previously declined to determine whether Warner was Hardhat's employee. (D.N. 85, PageID # 1150) The Court similarly makes no determination here as to whether Warner was also an employee of Hardhat because that question is not before the Court.

do the derivative loss-of-consortium claims.  *See McDaniel v. BSN Med., Inc.*, No. 4:07-cv-00036, 2010 WL 4779767, at *4 (W.D. Ky. Nov. 16, 2010) ("A loss of consortium claim 'is derivative in nature, arising out of and dependent upon the right of the injured spouse to recover.'" (quoting *Floyd v. Gray*, 657 S.W.2d 936, 941 (Ky. 1983) (Leibson, J., dissenting))).

### B.    Campus Crest's Motion for Summary Judgment

#### 1.    Claims Against Campus Crest Construction

Campus Crest Construction also asserts that it is immune from liability under Kentucky's workers' compensation law.  (D.N. 101-1, PageID # 1382-88)  Plaintiffs respond that while Campus Crest Construction might be entitled to immunity, it may still owe Warner a contractual duty.  (D.N. 102, PageID # 1541-44)

The Kentucky Workers' Compensation Act provides that covered employers shall be liable for compensation for injury without regard to fault.  Ky. Rev. Stat. § 342.610(1).  The Act further provides:

> A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter.

§ 342.610(2).  "A person who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall . . . be deemed a contractor, and such other person a subcontractor." § 342.610(2)(b).  And as discussed in Section III.A above, "[i]f an employer secures payment of compensation as required by [the Act], the liability of such employer . . . shall be exclusive." § 342.690(1).  This exclusivity provision "grants immunity for liability arising from common

law and statutory claims." *Slusher*, 325 S.W.3d at 323. These provisions in combination produce "up-the-ladder" contractor immunity under Kentucky law:

> [A] contractor has immunity from negligence actions (in return for providing backup workers' compensation coverage) when "the worker was injured while performing work that was of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of the [contractor]," no matter whether "the immediate employer actually provided workers' compensation coverage."

*Black*, 835 F.3d at 583. Therefore, if Campus Crest Construction qualifies as a "contractor" under § 342.610(2)(b), then it is entitled to up-the-ladder immunity.

It is undisputed that Campus Crest Construction contracted with Titan for electrical work. (*See* D.N. 101-4) And electrical work is a "regular . . . part of the work of [the] trade, business, occupation, or profession" of construction companies like Campus Crest Construction. *See Boyd v. Doe*, No. 13-136-ART, 2014 WL 5307951, at *2 (E.D. Ky. Oct. 15, 2014). The court in *Boyd* explained, "As long as the company contracts away a job it is expected to perform—even if it never actually performs the job—the company can be considered a 'contractor' that reassigned 'regular or recurrent' work." *Id.* (citing *Doctors' Assocs., Inc. v. Uninsured Emp'rs Fund*, 364 S.W.3d 88, 92 (Ky. 2011)). "For example, installing HVAC, plumbing, and electrical systems are jobs that a construction company is expected to perform." *Id.* (citing *Cain*, 236 S.W.3d at 587-88). Campus Crest Construction is such a construction company, and thus its "regular or recurrent" jobs include electrical work. *See id.* The Court therefore finds that Campus Crest Construction is a "contractor" under § 342.610(2)(b). As such, Campus Crest Construction is entitled to up-the-ladder immunity. *See Black*, 835 F.3d at 583.

Indeed, Plaintiffs appear to concede this point in their brief: "While Campus Crest Construction, Inc.[] may be entitled to up-the-ladder immunity in the present case, there is still a genuine issue of material fact as to whether it may owe Anthony Warner a contractual duty."

(*See* D.N. 102, PageID # 1541) Plaintiffs go on to discuss a contract between Campus Crest Construction and DM Masonry requiring DM Masonry to obtain liability-insurance coverage. (*Id.*, PageID # 1541-42) Plaintiffs allege that Campus Crest Construction breached this contract by failing to obtain proof of DM Masonry's insurance prior to allowing it to perform work and that Warner, as a third-party beneficiary, may sue Campus Crest Construction to recover for this breach. (*Id.*, PageID # 1542-44) In response, Campus Crest Construction asserts that its up-the-ladder immunity is "absolute." (D.N. 106, PageID # 1644-45)

The problems with Plaintiffs' contract argument are threefold. First, Plaintiffs failed to assert a contract claim in their amended complaint (*see* D.N. 23), and they cannot do so for the first time here. *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (explaining that a plaintiff may not expand its claims to assert new theories in response to summary judgment); *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 787-89 (6th Cir. 2005) (holding that a plaintiff may not raise a new legal claim in response to summary judgment). Second, Kentucky case law suggests that up-the-ladder immunity is indeed absolute: "The effect of this [exclusivity provision] is that 'KRS 342.690(1) and its predecessor statute shield a covered employer and its insurer from *any other liability* to a covered employee for damages arising out of a work-related injury.'" *Slusher*, 325 S.W.3d at 323 (emphasis added) (quoting *Coleman*, 236 S.W.3d at 13). Plaintiffs have not pointed to any case law indicating that up-the-ladder immunity does not apply to contract claims.

Third, Warner was not a third-party beneficiary of the contract. Under Kentucky law, "no stranger to a contract may sue for its breach unless the contract was made for his benefit." *Sexton v. Taylor Cty.*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985) (citing *Long v. Reiss*, 160 S.W.2d 668, 673 (Ky. 1942)). "Parties for whom these contracts are made fall into two

classes—donee beneficiaries and creditor beneficiaries." *Id.* "In order to be either a donee or creditor beneficiary, it must be proven that the contract in question was made for the actual and direct benefit of the third party." *Id.* The fact that a party may incidentally benefit from a contract is insufficient. *See Bariteau v. PNC Fin. Servs. Grp., Inc.*, 285 F. App'x 218, 221 (6th Cir. 2008).

Although the Court may consider more than just the terms of the contract in making this determination, *see Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009), both parties here rely on the contract language (*see* D.N. 102, PageID # 1542-44; D.N. 106, PageID # 1645-46). Section 4 of the contract required DM Masonry to "secure and maintain such insurance policies as will protect himself, its subcontractors, contractor, and owner" from "claims for bodily injuries, death[,] or property damage arising under or relating to [DM Masonry's] performance." (D.N. 102-2, PageID # 1556) The contract was thus made primarily for the benefit of DM Masonry, Campus Crest Construction, and Campus Crest at Louisville. (*See id.*, PageID # 1551, 1556) Although Warner might have indirectly benefited from the insurance coverage, he would have been an incidental beneficiary unable to recover under the contract. *See Jenkins v. Best*, 250 S.W.3d 680, 682-83, 696 (Ky. Ct. App. 2007) (holding that contract between hospital and physicians' group to provide medical services was primarily for the hospital's benefit rather than for the benefit of the patients); *Daniel Boone Clinic, P.S.C. v. Dahhan*, 734 S.W.2d 488, 489, 491 (Ky. Ct. App. 1987) (holding that patients were only incidental beneficiaries of professional-services contract between clinic and doctor even though they were the ones served by the contract). The Court will therefore grant summary judgment in favor of Campus Crest Construction.

## 2.      Claims Against Campus Crest at Louisville and Campus Crest Development

Campus Crest at Louisville and Campus Crest Development argue that they are entitled to summary judgment because they owed no duty to Warner and cannot be held liable for any negligence of independent contractors working at The Grove.  (D.N. 101-1, PageID # 1388)  Plaintiffs respond that both entities had a duty under OSHA and KOSHA[3] to maintain a safe work environment for all workers, including Warner.  (D.N. 102, PageID # 1539, 1541)

"[A]n employer is obligated to protect all employees working at its workplace only 'once [that] employer is deemed responsible for complying with OSHA regulations.'"  *Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 477 (6th Cir. 1995) (quoting *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799, 805 (6th Cir. 1984)).  Once an employer is deemed responsible for complying with OSHA regulations, however, it owes those duties to both its own employees and employees of an independent contractor.  *See id.* at 477-78.  Thus, the critical question in determining whether an OSHA violation constitutes negligence is "whether the defendant is an employer subject to the OSHA regulation in question."  *Id.* at 477.  The court in *Ellis* reasoned that the defendant was not such an employer because the site of the accident was not "a regular job site on which [the defendant] had a duty to protect its own employees."  *See id.* at 478.  Instead, "[the defendant] was no different than a property owner hiring a contractor to perform work on its property."  *Id.*

The Kentucky Court of Appeals has summarized the rule from *Ellis* as follows:

In essence, *Ellis* holds that an employer is liable to all employees—either its own or those of an independent contractor—only for violations of those standards that

---

[3] OSHA and KOSHA impose the same duty upon employers.  *See* 19 U.S.C. § 654(a); Ky. Rev. Stat. § 338.031(1); *see also Mitchell v. Howard's Hardware & Farm Supply, Inc.*, No. 2015-CA-001875-MR, 2017 WL 1437983, at *2 n.3 (Ky. Ct. App. Apr. 21, 2017) (noting that OSHA and KOSHA are "substantially identical").

it is required to obey and maintain in the regular course of its own business operations. If an independent contractor undertakes duties unrelated to the normal operations of an employer, the responsibility for violation of safety standards associated with those separate functions falls upon the independent contractor.

*Pennington v. MeadWestvaco Corp.*, 238 S.W.3d 667, 671-72 (Ky. Ct. App. 2007). Relying on *Ellis*, the court in *Pennington* concluded that the defendant was not an employer subject to OSHA because the facility where the accident took place was not a "regular job site" for the defendant. *See id.* at 672. Although the defendant had ultimate control over the premises by virtue of owning it, "it did not retain sufficient control of the subcontractor's employees . . . to be regarded as an employer responsible for violations of [KOSHA] safety standards." *Id.* Instead, the contract between the owner-defendant and the contractor conferred upon the contractor "the opportunity and the responsibility to assure compliance with relevant safety regulations." *Id.*

### a. Campus Crest at Louisville

With respect to Campus Crest at Louisville, the Court concludes that the facts here are analogous to those in *Pennington*, where the court found that a premises owner was not an employer subject to OSHA. 238 S.W.3d at 672. Plaintiffs cite three provisions of the contract between Campus Crest at Louisville and Campus Crest Construction that they assert show that Campus Crest at Louisville was in the construction business and therefore subject to OSHA and KOSHA. First, Campus Crest at Louisville appointed a representative to "be fully acquainted with the Project" and to "have the authority to bind the Owner in all matters requiring the Owner's approval." (D.N. 101-3, PageID # 1446) But the owner in *Pennington* also had a representative onsite daily to oversee the project and to facilitate the owner's right to take over the project in the event of the contractor's default. 238 S.W.3d at 670.

Second, Campus Crest at Louisville had a right to object to subcontractors and to order changes in the work within the general scope of the contract documents. (D.N. 101-3, PageID #

1447, 1452)  Again, the owner in *Pennington* had a right to ensure that the contract was being carried out in accordance with project plans, to access the facility at all times, and to terminate the contract and take possession of the work in the event of default.  238 S.W.3d at 670.

Third, if Campus Crest at Louisville deemed the worksite unsafe, the owner could request that Campus Crest Construction stop work or make corrections.  (D.N. 101-3, PageID # 1442)  If corrections were not made, Campus Crest at Louisville reserved the right to make them itself.  (*Id.*)  Campus Crest Construction, however, had "overall responsibility for safety precautions and programs" under the contract.  (*Id.*, PageID # 1441)  The contract in *Pennington* similarly assigned primary responsibility for workplace safety to the contractor rather than the owner.  238 S.W.3d at 669.

Although Plaintiffs assert that Campus Crest at Louisville was "in the construction business" (D.N. 102, PageID # 1537), they have not shown that construction was part of the "regular course" of Campus Crest at Louisville's business.  *See Pennington*, 238 S.W.3d at 671-72.  To the contrary, the design-build agreement makes clear that Campus Crest at Louisville retained Campus Crest Construction "to procure or furnish . . . the design phase services and construction phase services."  (D.N. 101-3, PageID # 1433-34)  The Court finds that Campus Crest at Louisville, as owner of the property, does not qualify as an employer subject to OSHA and KOSHA and thus had no duty to provide a safe workplace.

Even if the Court were to accept Plaintiffs' argument that Campus Crest at Louisville was "in the construction business" (D.N. 102, PageID # 1537, 1539), summary judgment would still be appropriate.  Kentucky statutes define "contractor" broadly to include any person who "contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person."  Ky. Rev. Stat.

§ 342.610(2)(b).  Thus, if Campus Crest at Louisville were in the construction business, it would be considered a contractor under § 342.610(2)(b) because it contracted with Campus Crest Construction to perform the actual construction work.  (*See* D.N. 101-3)  "If deemed to be 'contractors,' . . . owners, like any other employers, are immune from tort liability . . . with respect to work-related injuries" under the up-the-ladder immunity doctrine.  *Cain*, 236 S.W.3d at 585.  The Court will therefore grant summary judgment in favor of Campus Crest at Louisville.

### b.  Campus Crest Development

As discussed in Section III.B.2 above, whether Campus Crest Development owed a duty to Warner depends on whether it is an employer subject to OSHA and KOSHA.  *See Ellis*, 63 F.3d at 477.  Campus Crest Development qualifies as such an employer only if the standards at issue—here, OSHA and KOSHA construction-site standards—are ones that "it is required to obey and maintain in the regular course of its own business operations."  *See Pennington*, 238 S.W.3d at 671-72.  Plaintiffs point to several provisions of the development agreement that they argue make Campus Crest Development an employer with a duty to maintain a safe work environment.  Under the agreement, Campus Crest Development was responsible for administering and supervising construction of the project by the general contractor, making and implementing day-to-day decisions in performance of its obligations, rendering directions to third parties as necessary, using commercially reasonable efforts to obtain satisfactory performance of the construction contract, overseeing and administering construction in accordance with industry standards, and managing development consistent with the standard of care for comparable student housing facilities.  (D.N. 101-2, PageID # 1395-96, 1401, 1403, 1406)

However, the agreement also specified that Campus Crest Development was not responsible for construction or safety:

> Developer will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work, since these are solely the General Contractor's responsibility under the Construction Contract.

(*Id.*, PageID # 1402)  The Court thus finds that Campus Crest Development's responsibilities were supervisory and administrative in nature, but they did not include construction.  Thus, Campus Crest Development was not required to obey OSHA and KOSHA construction-site standards in the regular course of its business, and as a result, it did not owe a duty to Warner. *See Pennington*, 238 S.W.3d at 671-72.

Even if the Court were to accept Plaintiffs' argument that Campus Crest Development was "in the construction business" (D.N. 102, PageID # 1537, 1541), summary judgment would still be appropriate for reasons similar to those discussed in Section III.B.2.a above.  The only difference here is that Campus Crest Development did not enter into a formal written contract with another to perform construction work.  But a formal written contract is not required in order for a construction manager to be considered a "contractor" entitled to up-the-ladder immunity. *Beaver v. Oakley*, 279 S.W.3d 527, 528 (Ky. 2009).  The Kentucky Supreme Court's decision in *Beaver* is instructive on this point.  In that case, the premises owner contracted with a construction manager to superintend or coordinate the work on the construction site, to recommend subcontractors to the owner, and to verify that subcontractors performed their jobs to the owner's satisfaction before approving their payment. *Id.* at 528-29, 533.  The construction manager in turn hired a project superintendent to oversee the project on a day-to-day basis. *Id.* at 528-29.  The plaintiff, an employee of a subcontractor working onsite, was injured and filed a negligence suit against the project superintendent. *Id.*  The superintendent argued that his

employer, the construction manager, functioned as the general contractor, entitling him to up-the-ladder immunity. *Id.* at 529. The court agreed, holding that the superintendent was indeed entitled to up-the-ladder immunity because the construction manager functioned as the contractor and the superintendent its representative. *Id.* at 535. Despite the absence of a formal written contract, the court reasoned that a contract existed between (1) the construction manager and superintendent and (2) the subcontractor to supervise the subcontractor's work and certify completion. *Id.* at 532-33.

Similarly, Campus Crest Development did not have a written contract with Titan. But Campus Crest Development, like the construction manager in *Beaver*, was responsible for supervising the project, assisting Campus Crest at Louisville in the selection of contractors, and certifying that the general contractor's quality of work was in substantial accordance with the construction contract before approving payment. (D.N. 101-2, PageID # 1395, 1402) These responsibilities necessarily included overseeing the work of subcontractors like Titan as well, as the construction contract required Campus Crest Construction as general contractor to manage the subcontractors in the performance of their work and to bind all subcontractors to the contract's provisions. (*See* D.N. 101-3, PageID # 1447) Thus, it is reasonable to conclude under these facts that a contract between Campus Crest Development and Titan required Campus Crest Development to supervise Titan's work, *see Beaver*, 279 S.W.3d at 533, and Campus Crest Development therefore qualifies as a "contractor" entitled to up-the-ladder immunity. Thus, the Court concludes that summary judgment in favor of Campus Crest Development is appropriate.

### C. JCR Company's Motion for Summary Judgment

JCR Company argues that it is entitled to summary judgment because it owed no duty to Warner. (D.N. 108-1, PageID # 1665-67) Plaintiffs respond that summary judgment is

inappropriate because JCR Company owed a duty to Warner and there is a genuine issue of material fact as to whether JCR Company's negligence caused or contributed to Warner's death. (D.N. 121, PageID # 1976-78)  Specifically, Plaintiffs assert that JCR Company owed a duty to perform its work in a safe and reasonable manner under both OSHA and KOSHA and its contract with Campus Crest Construction.  (*Id.*, PageID # 1976)

"Under Kentucky law, a 'negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury.'"  *Sutton v. Hous. Auth. of Hickman, Ky.*, No. 5:14-CV-00161-TBR-LLK, 2016 WL 6836943, at *4 (W.D. Ky. Nov. 18, 2016) (quoting *Wright v. House of Imports, Inc*., 381 S.W.3d 209, 213 (Ky. 2012)).

Whether JCR owed a duty to Warner under OSHA and KOSHA depends on whether it is an employer subject to OSHA and KOSHA.  *See Ellis*, 63 F.3d at 477; *see* Section III.B.2 above. And JCR qualifies as such an employer if OSHA and KOSHA safety standards are ones that "it is required to obey and maintain in the regular course of its own business operations."  *See Pennington*, 238 S.W.3d at 671-72.  Campus Crest Construction hired JCR Company to perform work related to drywall, painting, insulation, cabinets, doors, bathrooms, and window treatments—all at The Grove worksite.  (D.N. 121-1, PageID # 1981)  The contract between Campus Crest Construction and JCR expressly provided that JCR would keep the worksite free from debris at all times, perform all work in a safe and reasonable manner, take all reasonable precautions to protect persons against injury, and comply with all safety regulations set forth by OSHA and KOSHA.  (*Id.*, PageID # 1984)  The contract incorporated by reference general safety guidelines, which required subcontractors like JCR to comply with all OSHA construction standards.  (*Id.*; D.N. 121-2, PageID # 2052)  The guidelines further instructed JCR to avoid poor

housekeeping, to report unsafe conditions, and to reerect fall-protection devices if they were removed for any reason.  (D.N. 121-2, PageID # 2052)  It is apparent from the contract, therefore, that JCR was required to obey and maintain OSHA and KOSHA safety standards in the "regular course" of its business.  *See Pennington*, 238 S.W.3d at 671-72.  The Court concludes that JCR Company owed a duty to Warner under OSHA and KOSHA and its contract with Campus Crest Construction.  *See Hargis v. Baize*, 168 S.W.3d 36, 43 (Ky. 2005) (concluding that "KOSHA's protections extend to any employee . . . who is performing work at another employer's workplace").

Moreover, summary judgment in favor of JCR Company would be inappropriate at this stage because there is a genuine issue of material fact with respect to whether JCR breached its duty to Warner.  Campus Crest Construction tasked JCR Company with installing door hardware (D.N. 121-1, PageID # 1981), and JCR was still installing the hardware at the time of Warner's death (*see* D.N. 121-5, PageID # 2078-80; D.N. 121-6, PageID # 2082-84; D.N. 121-9, PageID # 2090).  Plaintiffs present evidence showing a pallet of wrapped deadbolts in the hallway by the elevator shaft where Warner eventually fell to his death.  (D.N. 121-12, PageID # 2099-2100) According to Plaintiffs, there is no record showing that JCR removed the pallet or reported the hazard to anyone prior to Warner's death.  (D.N. 121, PageID # 1977)  JCR points to evidence showing that its employees were not working around the elevator shaft and that it was not cited for any OSHA violations.  (D.N. 122-1, PageID # 2109)  JCR also posits that if its employees had left job materials in such a manner as to lead to Warner's death, then OSHA certainly would have cited it for violations.  (D.N. 122, PageID # 2105)  The Court finds that there is a genuine issue of material fact here that precludes summary judgment—namely, whether JCR Company or its employees left the wrapped deadbolts in the hallway, obstructing Warner's path and

contributing to his death. The Court will therefore deny summary judgment in favor of JCR Company.

### D. Bigford Enterprises' Motion for Summary Judgment

Bigford Enterprises also moves for summary judgment on the ground that it owed no duty to Warner. (D.N. 128-1, PageID # 2138-40) Plaintiffs respond that Bigford Enterprises owed a duty under OSHA and KOSHA and its contract with Campus Crest Construction to perform its work in a safe manner and to protect persons from injury. (D.N. 131, PageID # 2266) Plaintiffs also argue that a genuine dispute of material fact exists with respect to whether Bigford Enterprises' action or inaction contributed to Warner's death. (*Id.*, PageID # 2266-67)

"Under Kentucky law, a 'negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury.'" *Sutton*, 2016 WL 6836943, at *4.

Campus Crest Construction hired Bigford Enterprises to perform framing work at The Grove. (D.N. 131-1; D.N. 131-2) Like JCR, Bigford Enterprises had safety responsibilities under its contract with Campus Crest Construction. The contract required Bigford Enterprises to keep the worksite free from debris at all times, perform all work in a safe and reasonable manner, take all reasonable precautions to protect persons against injury, and comply with all safety regulations set forth by OSHA and KOSHA. (D.N. 131-2, PageID # 2204) General safety guidelines further required Bigford Enterprises to comply with all OSHA construction standards, maintain proper housekeeping at the worksite, report unsafe conditions, and reerect fall-protection devices if they were removed for any reason. (*Id.*; D.N. 131-3, PageID # 2214) It follows from the contract and the guidelines that Bigford Enterprises was required to obey and

maintain OSHA and KOSHA safety standards in the "regular course" of its business. *See Pennington*, 238 S.W.3d at 671-72. The Court thus concludes that Bigford Enterprises had a duty under OSHA and KOSHA and its contract with Campus Crest Construction to maintain a safe work environment.

It is undisputed that Bigford Enterprises completed its final cleanup of all buildings during the week ending July 12, 2014, at least three days before Warner first reported to work. (D.N. 128-6, PageID # 2184; D.N. 128-3, PageID # 2151-52) Plaintiffs argue, however, that Bigford Enterprises had a duty to report unsafe conditions during the time frame before Warner fell. (D.N. 131, PageID # 2266) But Plaintiffs have not shown that Bigford Enterprises breached its duty by failing to report unsafe conditions of which it was aware. Plaintiffs present no evidence that the alleged unsafe conditions—i.e., the obstructed hallway and the unguarded elevator shaft—existed on or before July 12, 2014, while Bigford Enterprises was present at the construction site and could have discovered and reported them. Meanwhile, Bigford Enterprises has pointed to evidence showing that pallets of light fixtures were placed in the hallway on July 16, 2014, several days after Bigford Enterprises finished working in the buildings. (D.N. 131-7, PageID # 2246; *see* D.N. 128-6, PageID # 2184) And Plaintiffs have not shown that the elevator barrier and scaffolding were removed while Bigford Enterprises was still on the premises. In fact, Plaintiffs admit that there is no evidence as to how long the elevator shaft had been left unprotected at the time Warner fell. (D.N. 131, PageID # 2266) Because Plaintiffs have not shown that Bigford Enterprises breached its duty to Warner, their negligence claims against Bigford Enterprises fail. The Court will therefore grant summary judgment in favor of Bigford Enterprises.

**IV.     CONCLUSION**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Titan Electric of Kentucky, LLC's motion for summary judgment (D.N. 89) is **GRANTED**.

(2)     Campus Crest Construction, Inc.; Campus Crest at Louisville, LLC; and Campus Crest Development, Inc.'s motion for summary judgment (D.N. 101) is **GRANTED**.

(3)     JCR Company, Inc.'s motion for summary judgment (D.N. 108) is **DENIED**.

(4)     Bigford Enterprises, Inc.'s motion for summary judgment (D.N. 128) is **GRANTED**.